**UNITED STATES of America, Petitioner,**

v.

**MOBIL CORPORATION and Mobil Oil Corporation, Respondents.**

**Civ. A. No. CA–3–80–0438–G.**

United States District Court, N. D. Texas, Dallas Division.

Dec. 18, 1981.

Kenneth J. Mighell, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., Michael E. Greene, Tax Division, Dallas, Tex., for petitioner.

Chas. R. Haworth, R. Hunter Summers, Hewett, Johnson, Swanson & Barbee, Dallas, Tex., for respondents.

## MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

The United States of America ("USA") seeks a permanent injunction compelling Mobil Corporation and Mobil Oil Corporation (collectively "Mobil") to allow inspection of certain records by the Internal Revenue Service ("IRS").[1] USA claims its right to inspect is conferred by Section 6001

1. Since the action is brought on behalf of the IRS, the petitioner will be referred to herein as either the USA or the IRS.

The shifts in the contentions of Mobil and IRS ought to be noted in order to place this court's earlier discovery order in perspective. See. *United States v. Mobil Corp.*, 499 F.Supp. 479 (N.D.Tex.1980). At that juncture of the suit, Mobil's argument as to the limited role of § 6001 was more modest. It resisted production of documents that were *not* required to be maintained by § 6001. Mobil then made no claim that the § 7602–7610, summons procedure was the exclusive enforcing mechanism for IRS inspection of documents required to be kept by § 6001. At the same time, Mobil sought discovery that was allowable only if a summons had issued, arguing that the *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), standards ought to be applied by analogy. I then, in response, reasoned

that the reach of a production under § 6001 as then read by both Mobil and IRS did not require the same protection as the broader sweep of inspection under § 7602 *et seq.* My point is that the discovery ruling accepted Mobil's concession of an obligation to produce records required to be kept under § 6001 and did not address the more basic question of whether § 6001 was a source of any inspection right. The reasoning of that discovery order is a seeming invitation for the IRS argument which followed. As I point out in this opinion, the court's footnote in *Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), to the extent it recognizes a privacy interest in a record created only for government inspection, gives me pause. I only say here that, given *Barlow's*, the IRS view of § 6001 at the least poses sufficiently serious constitutional problems that, coupled with the other indices of congressional purpose, it cannot be adopted.

of the Internal Revenue Code of 1954, as amended, 26 U.S.C. Section 1 et seq. (the "Code"). Both Mobil and IRS have moved for summary judgment.

The dispute leading to this suit began during an IRS audit of Mobil. The IRS requested information from Mobil concerning the number of exemptions claimed by Mobil's employees on their tax withholding forms. Mobil resisted the request, insisting upon a summons. The IRS has declined to issue and seek enforcement of a summons. It seeks instead to obtain an inspection of certain records under 26 U.S.C. § 6001. That is, IRS seeks a judicial declaration of its right to demand inspection without resort to the procedures for issuance of a summons. See 26 U.S.C. § 7602–7610.

The following facts are undisputed:

1. The identity of the records which the IRS is presently seeking is not in dispute.[2]

2. The specific records which the IRS wishes to inspect are microfiche copies of salary checks and stubs for each payment of compensation and Forms W–4 for each employee.[3]

3. The IRS has not identified specific Mobil employees whose tax liability is being investigated.

2. The records are described in the affidavit of Loren E. Thomas of Mobil as follows:

Records Kept by Mobil Oil

18. For the years 1978 and 1979, [Mobil Administrative Services Company, Inc.] MASCI has kept records containing the information required to be kept by Treas.Reg. § 31.6001–5. These records include the following for each person who was employed by Mobil Oil at any time during such years and who was paid through a payroll system maintained by MASCI:

(a) The name, address, and social security account number of the employee.

(b) The total amount and date of each payment of remuneration (including any sum withheld therefrom as tax or for any other reason) and the period of services covered by such payment.

(c) The amount of any remuneration payment which constitutes wages subject to withholding.

(d) The amount of tax collected with respect to such remuneration.

(e) The amount of payments made to each employee under a wage continuation plan and the beginning and ending dates of each period of absence from work for which each such payment was made.

(f) The withholding exemption certificates (Forms W–4) filed with Mobil Oil by the employee.

[19.] For 1978 and 1979 the official records of the information described in Paragraph 18(a) above are the original Forms W–4 signed by each employee that were effective at the time, except that the official record of an employee's then-current address in cases in which the employee's address changed after his most recent Form W–4 had been filed is the internal form 1454 or form 1454 (supplement) kept in the employee's personnel file and on which the address change was made.

20. For 1978 and 1979 the official record of the information described in Paragraphs 18(b), (c), and (d) above, other than the period of services covered by the payment, are the microfiche copies of the payroll checks and stubs for each payment of compensation. The period of services covered by any payment of regularly scheduled wages can be determined from the microfiche copies of the payroll checks and stubs, but the period covered by payments of overtime or other extraordinary amounts can be determined only by reviewing variation reports and the documents from which such reports were prepared.

21. For 1978 and 1979 the official record of the information described in Paragraph 18(e) above is the Form CO Annual Attendance Record (includes date of absence only) which is maintained within each section of each department of Mobil Oil.

22. For 1978 and 1979 the official record described in Paragraph 18(f) above is the Form or Forms W–4 that were effective at the time, which are kept in the individual payroll personnel file maintained for each employee. The personnel files for all individuals employed by Mobil Oil during 1978 and 1979 (other than those individuals employed by Mobil Oil's Plastics Division), are maintained at the offices of MASCI in Dallas, Texas.

3. The form of the information sought by the IRS has changed during the course of this action. Originally, the IRS requested access to magnetic computer tapes or hard copies of Forms W–2 and W–4. Mobil's decision to resist the original IRS request appears to have been based in large part on the fact that there was a considerable amount of information about its personnel on the computer tapes which was unrelated to its employees' tax liability. At a later point, Mobil offered to compromise the suit by giving the IRS access to its employees' W–2 and W–4 forms, but due to a breakdown in communication the IRS did not accept this compromise. Consequently, the court must decide whether the IRS is entitled to inspect the information in the form currently requested—Forms W–4 and microfiche copies of salary checks.

4. The IRS has not sought, and declines to seek, to acquire these records with an administrative summons as authorized in Sections 7602–10 of the Code.

This request puts in issue the authority of IRS under Section 6001 of the Code to inspect the designated records, with the subsidiary question of whether reading Section 6001 to allow IRS to inspect without a warrant or its equivalent is constitutionally permissible.

I. *Authorization for Inspection of Records Under Section 6001.*

██ The IRS claims that Section 6001 and its implementing Treas.Reg. Section 31.6001–1(3) grant to it the right to inspect the designated records. I will examine this claim by reviewing the language of the statute and the regulations enacted pursuant to it, the authority construing Section 6001, and the relationship of Section 6001 to other Code provisions.

A. *The Language of Section 6001.*

Section 6001 of the Code provides as follows:

*Notice or regulations requiring records, statements and special returns.*

Every person liable for any tax imposed by this title, or for the collection thereof, *shall keep such records, render such statements, make such returns,* and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title. The only records which an employer shall be required to keep under this section in connection with charged tips shall be charge receipts and copies of statements furnished by employees under section 6053(a). (emphasis supplied). 26 U.S.C. Section 6001.

The regulation provides in relevant part:

*Records in general.—*

(a) *Form of records.* The records required by the regulations in this part shall be kept accurately, but no particular form is required for keeping the records. Such forms and systems of accounting shall be used as will enable the district director to ascertain whether liability for tax is incurred and, if so, the amount thereof.

(b) *Copies of returns, schedules, and statements.*

Every person who is required, by the regulations in this part or by instructions applicable to any form prescribed thereunder, to keep any copy of any return, schedule, statement, or other document, shall keep such copy as a part of his records.

\*     \*     \*     \*     \*     \*

(e) *Place and period for keeping records.*

(1) All records required by the regulations in this part shall be kept, by the person required to keep them, at one or more convenient and safe locations accessible to internal revenue officers, and *shall at all times be available for inspection by such officers.*

(2) \* \* \* [E]very person required by the regulations in this part to keep records in respect of a tax (whether or not such person incurs liability for such tax) shall maintain such records for at least four years after the due date of such tax for the return period to which the records relate, or the date such tax is paid, whichever is the later. \* \* \* (emphasis supplied). 26 C.F.R. Section 31.6001.

IRS argues that the language of § 6001 directly, or by permissible implementing regulations, necessarily gives to it the right to inspect records of an employee's claimed withholding which are held by an employer. I disagree. Whatever the reach of the "make such returns" language (compare to a taxpayer's return filing obligations in Code Sections 6011–6013, 6031–6037 which employ this term), it does not address in-

spection of records. Nor does the phrase "render such statements" apply to inspections. The latter is a term of art concerning the obligation of one taxpayer to report to another. (*See* Sections 6042(c), 6044(e) and 6049(c) of the Code). Finally, the requirement that a taxpayer "keep such records" sheds little light upon the procedural prerequisites to their inspection. For example, the same "at all times available for inspection" language in Treas.Reg. § 31.-6001–1(e) is contained in the regulations issued by the Secretary of the Treasury under the Bank Secrecy Act. Compare Treas.Reg. § 31.6001–1(e) and 31 CFR § 103.32 (1980). Access to records required to be maintained under that Act requires resort to the summons provisions. See *California Bankers Ass. v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

There are at least two interpretations of the underlined language of § 6001, both syntactically reasonable: (1) It authorizes the Secretary by regulation to define the procedural prerequisites to an inspection right internal to the statute or (2) it only requires the record holder to retain records (which can be inspected pursuant to other authority) of a type and in a manner defined by the Secretary. The "choice" is

illusory. I find no language in Section 6001 which compels a finding that the IRS has authority to force a record keeper to grant access to records with no right to judicial review before that inspection. The choice is dictated by adherence to the principle that any choice between alternative constructions of the statute must both reflect constitutional concerns and fulfill the intent of Congress.

### B. *Decisions Construing Section 6001.*

I have located only one decision in which the question of § 6001 as a direct source of inspection rights has been considered. *U. S. v. Ohio Bell Telephone*, 475 F.Supp. 697 (N.D.Ohio 1979) arose during an IRS investigation of the excise tax liability of identified subscribers to Ohio Bell's communications services.[4] The IRS requested access to exemption certificates executed by the subscribers and maintained by Ohio Bell, but Ohio Bell refused to make them available. The court in *Ohio Bell* decided that the IRS did not need a summons (as provided in Sections 7602–7610 of the Code) to obtain the information, because it had "implicit authority" under Section 6001 to require that the records be made available for inspection without a summons.[5]

---

**4.** *Ohio Bell* appears to be the only reported case in which the IRS has attempted to obtain records which a taxpayer is required to keep under § 6001 without first obtaining a summons as provided in § 7602. *See U. S. v. Davey*, 543 F.2d 996 (2d Cir. 1976); *Dowling v. Ribicoff*, 200 F.Supp. 543 (S.D.N.Y.1961). The courts have described § 6001 as a records maintenance provision and § 7602 as a records production provision. *U. S. v. Peden*, 70–2 U.S.T.C. 9505 (W.D.Ky.1970). The same division between maintenance and production was observed by courts which interpreted the predecessors of § 6001 and § 7602. *Falsone v. U. S.*, 205 F.2d 734, 739 (5th Cir.) *cert. den.* 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); *In re Wood*, 123 F.Supp. 297, 302 (W.D.Ky.1954). There are decisions which indicate that when a taxpayer is required to maintain records under § 6001 he cannot claim that these records are "private papers" which are immune from inspection pursuant to a subpoena or search warrant, *U. S. v. Clancy*, 276 F.2d 617, 631 (7th Cir. 1960), *rev'd on other grounds*, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); *U. S. v. Remolif*, 227 F.Supp. 420 (D.Nev.1964), but *Ohio Bell* appears to be the only case in which a court

authorized an inspection solely on the basis of § 6001.

**5.** Judge Contie's discussion of the matter is as follows:

[A]lthough Section 7601 [sic] (where the court refers to Section 7601 of the Code it means 7602 of the Code) provides the Internal Revenue Service with authority to issue summonses, it does not purport to require such issuance. Therefore, if the Internal Revenue Service were not provided authority elsewhere to obtain the documents in question without a summons, it could use a summons to do so pursuant to Section 7601 [sic]. Inasmuch as the Court has concluded that the Service is provided such authority, however, it is not necessary for it to resort to Section 7601 [sic].

Section 6001 of the Internal Revenue Code of 1954, 26 U.S.C. § 6001, provides as follows: . . .

Pursuant to the authority invested in him by Section 6001 the Secretary has issued 26 C.F.R. § 49.4253–11 and 26 C.F.R. § 148.1–4(g). Said regulations require persons re-

I do not find *Ohio Bell's* reading of Section 6001 persuasive. No precise language in the statute is pointed to for support of the conclusion that the IRS has "implicit authority" to inspect records under Section 6001. There is mention of the language in the regulations that records will be "available for inspection," but whether such language grants any inspection right not granted by § 6001 is not discussed. Nor, of course, is there mention of whether Section 6001 authorized such regulations. More to the point, *Ohio Bell* does not deal with the Fourth Amendment question posed by its construction.

### C. The Relationship of Section 6001 to Other Code Provisions.

Mobil claims that the placement of 6001 in the Code's structure supports its argument that Congress intended that the only means which the IRS can use to inspect records, including those it requires to be kept, is by administrative summons issued under Sections 7602–7610 of the Code.

While ". . . spatial proximity of two contemporary provisions . . ." may be without significance, *United States v. Bisceglia*, 420 U.S. 141, 155 n.1, 95 S.Ct. 915, 923 n.1, 43 L.Ed.2d 88 (1975), congressional placement in a comprehensive code with a logical or-

ganizational structure is at least a clue in the search for congressional intent and purpose. Section 6001 appears in Part I of Subtitle F of the Code. Subtitle F concerns "Procedure and Administration" and Part I of the subtitle deals with "records, statements and special returns." Another part of Subtitle F, Chapter 78, deals with "Discovery of Liability and Enforcement of Title" and Subchapter A of Chapter 78 is entitled "Examination and Inspection." Sections 7602–7610 of Subchapter A outline the procedures for obtaining records by means of administrative summons.[6] Thus, the structure of the Code is consistent with a conclusion that Section 6001 requires record keeping depending upon its companion provisions found in Sections 7602–7610 for the procedure for inspection of those records.

### Recent Past

In addition to the structure of the Code, the limited legislative history of Sections 7602–7610 suggests that Congress intended that these provisions were to be the sole means under the Code for obtaining taxpayer records held by third parties. Senator Haskell, the Chairman of the Senate subcommittee which, in 1976, reported

---

sponsible for collection of tax imposed pursuant to Section 4251 to retain the certificates of exemptions issued pursuant to subsections (c), (d), and (j) of Section 4253 and to make said certificates "available for inspection by internal revenue officers for a period of at least three years from the date the tax would have become due, if payable." The Court finds that implicit within the authority granted the Secretary by Section 6001 to require that records be kept is the authority to require that such records be available for inspection without the issuance of a summons. The Court further finds, based on the previous discussion of Sections 7601 [sic] and 7609, that 26 C.F.R. § 4253–11 and 26 C.F.R. § 148.1–4(g) are not inconsistent with said statutes. *Id.* at 699–700.

**6.** The IRS has cited Section 7601 of the Code which is part of the subchapter on "Examinations and Inspections" as an *alternative source* of statutory authorization for the proposed inspection. This provision authorizes the IRS to investigate all persons "who may be liable to pay Internal Revenue tax, and all persons owning or having the care and management of any

objects with respect to which any tax is imposed." 26 U.S.C. 7601(a). Even though this provision could be construed as providing the IRS broad *investigating* powers it does not appear to authorize *inspections* because the Code deals with that question separately and explicitly in Sections 7602–10. This interpretation of 7601 is supported by the fact that in delegating authority to administrative agencies Congress has been very careful to explicitly and separately delegate investigating authority and authority to compel production of records. (Compare 46 U.S.C. § 239(a) and 239(e); also compare 7 U.S.C. § 12(a) and § 15).

The IRS has also cited Section 7805 of the Code which authorizes the Secretary "to prescribe all needful rules and regulations for the enforcement of this title" as additional evidence that Congress intended to delegate authority to the IRS to inspect the records in question without a summons. A general authorization to prescribe needful regulations is not sufficient statutory authorization to compel a party to allow the inspection of its records.

amendments to the provisions of the Code concerning administrative summons, remarked on the Senate floor concerning the new provision governing the issuance of "third party" summons, Section 7609:

## PROTECTION OF THE TAXPAYERS' RIGHTS AND PRIVACY

Mr. Haskell. Mr. President, I rise to briefly clarify a point raised about a provision in the tax bill, H.R. 10612, which we have just passed. The provision in question, Sec. 1205, restricts the use of administrative summons by the IRS to gain access to records held by third parties, such as banks, brokers, lawyers, and accountants.

The question which has been raised is whether these rules are the exclusive method of access to these records or whether the IRS can avoid these rules and get the records by informal access without any type of summons.

As chairman of the Administrative Subcommittee of the Finance Committee, I studied this issue in depth. Senator Doyle, the ranking Republican on the subcommittee, and I proposed the provision to the committee and it was adopted.

We heard much testimony on the abuses of taxpayer's rights by the IRS in various situations. As a result, the tax bill contains many administrative provisions designed to protect the taxpayers' rights and privacy and limit the unbridled power of the IRS to examine a taxpayer's records. In the future, the use of an administrative summons will require the person whose records are sought to have notice and the opportunity to object and require the more formal processes of a court-ordered summons. We drew these strict rules to protect the right of privacy that we felt every citizen expects, and rightfully so, in their personal bank records, lawyer's files, et cetera.

*At no time did we discuss the questions of allowing informal access to these records without a summons of any sort.* We carefully defined the safeguards and spelled out several extraordinary situations in which these procedures can be avoided where they might jeopardize an investigation or the safety of a witness. *It seems to me absurd to suggest that the Congress would act so clearly to protect citizens from the processes of an agency and make those protections optional, binding only when the agency chose. . . .* (emphasis supplied). 127 Cong.Rec. 34772 (1976) (Comments of Sen. Haskell, Chairman, Administrative Subcommittee of Senate Finance Committee.)

### Distant Past

The Revenue Act of 1864, ch. 173, 13 Stat. 223 (1864), required taxpayers to submit returns, § 11, and authorized tax assessors to issue summons requiring taxpayers to produce lists, statements, returns and books of account, § 14. The 1864 Act did not include a provision requiring taxpayers to keep records.

In 1873, Congress with its new Revised Statutes placed § 3173, the predecessor of the current Code's § 7602(2), in the "Assessments and Collections" part of the Internal Revenue Laws and integrated the return requirement and the summons provisions. The Revised Statutes did not include a provision requiring taxpayers to keep records. R.S. 3173 was reenacted without substantial change on numerous occasions prior to the first codification of the internal revenue laws in 1939.

The first record-keeping requirement appeared in the Revenue Act of 1914. It provided as follows:

That all administrative, special or stamp provisions of law, including the law related to assessment of taxes, so far as applicable, are hereby extended to and made part of this Act, and every person, firm, company, corporation or association liable to any tax imposed by this Act, or for the collection thereof, shall keep such records and render, under oath, such statements and returns, and shall comply with such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of Treasury, may from time to time prescribe and [every person who at-

tempts to evade taxation shall be liable for a penalty of twice the amount the person attempted to evade]. ch. 331, § 23, 38 Stat. 764.

Despite the fact that this was apparently the first enactment of its kind, it is not mentioned in the House or Senate reports concerning the Revenue Act of 1914. I pause to note that this first and direct antecedent of § 6001 was preceded by a statement that all administrative provisions of law including those related to assessment (this would include the summons provisions) were applicable to the taxes assessed under the 1914 Act, supporting at least an inference that this § 6001 equivalent was not then believed to be self-enforcing. Section 23 of the Revenue Act of 1914 was reenacted as part of the "Miscellaneous Taxes" title of the 1916 Revenue Act, ch. 463, § 409, 39 Stat. 792 (1916), but the 1916 version of § 6001 did not include a discussion of the penalties for attempted tax evasion. The "Munitions Manufacturer's Tax" Title of the 1916 Revenue Act also included a section authorizing the Commissioner to examine books and records. This section can be viewed as the first antecedent of 7602(1). ch. 463, § 308, 39 Stat. 782 (1916).

In § 1001 of the Revenue Act of 1917, Congress reenacted § 409 of the 1916 Act and included the return and record-keeping requirement in the "Administrative Provisions" title of the revenue laws. Section 1305 of the Administrative Provisions of the Revenue Act of 1918, ch. 18, § 1305, 40 Stat. 1142 (1919) combined the provisions of § 1001 of the 1917 Revenue Act with a provision concerning the Commissioner's authority to examine records [see § 7602(1) of the present Code]. The 1918 Act's summons provisions (the equivalent of the present § 7602(2) and a reenactment of R.S. § 3173) appeared at Section 1317 of the Act's General Administrative Provisions. The House and Senate Reports in their discussion of the 1918 Act do not indicate whether either the Act's record keeping or its record examination provisions were to be self-executing.

Nor is it clear what significance should be attached to the fact that for a brief period of time the predecessors of § 6001 and 7602(1) were incorporated into a single section of the revenue laws, only to be split by the Revenue Act of 1921. That act split § 1305 of the 1918 Act into two provisions:

### RETURNS.

Sec. 1307. That whenever in the judgment of the Commissioner, necessary he may require any person, by notice served upon him, to make a return or such statements as he deems sufficient to show whether or not such person is liable to tax.

### EXAMINATION OF BOOKS AND WITNESSES.

Sec. 1308. That the Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is hereby authorized, by any revenue agent or inspector designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons. ch. 136, §§ 1307, 1308, 42 Stat. 310 (1921).

It should be noted that unlike § 1305 of the 1918 Act, § 1307 of the 1921 Act does not require taxpayers to keep records. The absence of any authority to require taxpayers to keep records was corrected in the Revenue Act of 1924 with the following provision:

### TITLE X GENERAL ADMINISTRATIVE PROVISIONS ... RECORDS, STATEMENTS, AND SPECIAL RETURNS.

Sec. 1002. (a) Every person liable to any tax imposed by this Act, or for the

collection thereof, *shall keep such records, render under oath such statements, make such returns,* and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe.

(b) Whenever in the judgment of the Commissioner necessary he may require any person, by notice served upon him, to make a return, render under oath such statements, *or keep such records* as the Commissioner deems sufficient to show whether or not such person is liable to tax.... ch. 234, § 1002(a), (b), 43 Stat. 339 (1924). (emphasis supplied).

The Congress explained its reintroduction of the record keeping requirement as follows:

### GENERAL ADMINISTRATIVE PROVISIONS.

Section 1002(a):

With slight changes in verbiage, this subdivision comprises the latter part of section 1300 of the existing law.

Section 1002(b):

This subdivision, which empowers the Commissioner to require returns or statements under oath, as well as the keeping of records, supersedes section 1307 of the existing law. The two substantial changes are a grant of authority to the Commissioner to require such statements to be under oath, and to require the keeping of records. Under the existing law, many taxpayers evade the payment of any tax by keeping no records in cases where there is not sufficient evidence to ground a conviction for fraud. The proposed changes will assist in discouraging such tax evasion. H.R.Rep.No.179, 68th Cong., 1st Sess. 32 (1924); S.Rep.No.398, 68th Cong., 1st Sess. 43 (1924).

This discussion indicates that Congress viewed this predecessor of § 6001 as a tax evasion control measure. It gave no indication, however, as to whether § 1002 was to be self-executing and the General Administrative Provisions of the 1924 Act contained separate provisions providing for the examination of records and the issuance of summonses to obtain records, ch. 234, § 1009, § 1018, 43 Stat. 339, 345 (1924). The 1924 Act also included a record-keeping provision which was specifically directed at those with estate tax liability. ch. 234, § 304, 43 Stat. 307 (1924). The record and return, examination and summons provisions of the 1924 Act were reenacted without substantive change in the Revenue Act of 1926, ch. 27, § 1102, § 1104, § 1115, 44 Stat. 112, 113, 118–19 (1926).

The Revenue Act of 1928 contained a record and return provision in its Income Tax Title in addition to the record keeping provision in its General Administrative Provisions. ch. 852, § 54, 45 Stat. 791 (1928). This separate record and return provision was part of an effort to make the tax laws more comprehensible to individual income taxpayers by collecting all the laws relevant to income tax in one place. H.R.Rep.No.2, 70th Cong., 1st Sess. 11–12 (1927). Section 54 of the 1928 Act appeared in the following form in the 1928 Act and was reenacted a number of times without change.

Sec. 54. RECORDS AND SPECIAL RETURNS.

(a) By Taxpayer.—Every person liable to any tax imposed by this title or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe.

(b) To Determine Liability To Tax.—Whenever in the judgment the Commissioner necessary he may require any person, by notice served upon him, to make a return, render under oath such statements, or keep such records, as the Commissioner deems sufficient to show whether or not such person is liable to tax under this title. ch. 852, § 54, 45 Stat. 808 (1928).

The first codification of the Internal Revenue laws appeared in 1939. It included a number of record and return provisions which were directed at those with specific types of tax liability (*e.g.*, Income Tax,

§ 54; Estate Tax, § 821(d); Admissions and Dues Taxes, § 1720; Documents and Instruments Tax § 1835). It also included, as part of its General Administrative Provisions, record and return, examination and summons provisions which, with one exception, were identical to those found in the 1924 Act. The exception was that the record and return provision required taxpayers to make returns and statements and keep records where the Commissioner served notice on them, but it did not require them to perform these acts in the absence of notice by the Commissioner. Apparently, Congress believed such a provision was unnecessary given the fact that the record and return provisions cited above required such acts without notice. The record and returns provision of the 1939 Code, § 3603, appeared in "Subchapter A—Discovery of Tax Liability" of "Chapter 34—Informations and Returns." The examination, § 3614, and summons provisions, § 3615, of the Code appeared in "Subchapter B—Determination of Tax Liability" of Chapter 34. The records and returns provision appears in a subchapter of the 1939 Code which includes a provision for entry of premises for examination of taxable objects. It also provided for a search warrant, which might suggest that the Congress intended for it to serve as a source of authority for the acquisition of records. Yet, there is no indication in the Congressional Reports which discuss the 1939 Code to support such a reading because none of these reports discuss any of the provisions cited above.

When it enacted § 6001 as part of the 1954 Code, Congress eliminated the 1939 Code's record and return provisions which related to specific types of tax liability and combined the requirement that taxpayers keep certain types of records and make returns and statements with the requirement that they perform these acts upon notice by the Commissioner. Section 6001 was included in the "Records, Statements and Special Returns" portion of the Subtitle of the Code concerning "Procedure and Administration," which suggests that Congress did not intend for § 6001 to serve as an authorization to inspect records. Congress also combined, for the first time, the examination and summons provisions of the Code (§§ 7602(1) and 7602(2)). The congressional intent behind these structural changes is not recorded. The congressional reports on § 6001 and § 7602 merely indicate that these provisions do not reflect a change from existing law. H.R.Rep.No.1337, 83rd Cong., 2d Sess. and S.Rep.No.1622, 83rd Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad.News 4025, 4543, 5210.

In sum, the summons provisions of the revenue laws came into existence during the Civil War. The records and returns and records examination provisions first appeared during World War I and for a brief period were combined in a single section of the revenue laws. The records and returns provision was dropped from the revenue laws for three years and then added because it was needed to control tax evasion. At no point has Congress explicitly indicated that the requirement that taxpayers "keep records" grants the IRS authority to examine records, although the 1939 Codification of the Internal Revenue Laws placed one of § 6001's predecessors in a part of the Code related to "Discovery of tax liability." No clear picture of congressional intent is presented by the legislative history of these provisions. We are left then with the current structure of the Code and the remarks of Senator Haskell. At the same time, it ought to be noted that the records maintenance provision has never existed without a summons provision, and the summons provisions were continued after the record keeping provisions were adopted.

### D. *Summary.*

In summary, this review of § 6001, its language, the authority construing it, and its relationship to other Code provisions, even while falling substantially short of demonstrating congressional purpose with certainty, provides some support for Mobil's contention that the IRS cannot rely upon § 6001 as a grant of a right of inspection; that it must look to other sources, such as its administrative summons procedures, in order to inspect records required to be kept

by § 6001. Regardless, the exercise demonstrates that so interpreting § 6001 is permissible, at the least, if indeed it is not more plausible than any other.

Relying upon the understanding of one Senator in plumbing for congressional intent or purpose is a hazardous enterprise. Moreover, we must keep in mind that Senator Haskell was expressing his understanding of § 6001 in the context of the intended purpose of amendments to § 7609. Thus, his view sheds light upon the congressional purpose behind § 7609, but not § 6001. At the same time, we do know that Congress was then concerned with potential abuse by the tax collectors, and while the means of achieving its purpose are not conclusively stated, its purpose is. In this sense the history, although lean in specifics, is nonetheless helpful. This is so because it necessarily follows that a proffered interpretation of means that, even with present eyesight, are found to travel against the overall purpose of Congress, ought not be lightly accepted.

The argument that acceptance of the IRS reading of § 6001 would frustrate this general congressional purpose behind Sections 7602–10 is compelling. More specifically, the IRS construction would reduce the effectiveness of a carefully constructed set of protections for taxpayers. We know that in order to issue a summons entitling it to examine books and records under Code Section 7602(2), not only may the IRS not seek the records solely for a criminal purpose, *U. S. v. LaSalle National Bank*, 554 F.2d 302

(7th Cir. 1977), it must meet four other tests of its "good faith" which are set forth in *U. S. v. Powell*, 379 U.S. 48, 57–8, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964), which were recently summarized by the First Circuit as follows:

> [T]he IRS must show (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already in the possession of the IRS; and (4) that the administrative steps required by the Internal Revenue Code have been followed.

*U. S. v. Freedom Church*, 613 F.2d 316, 319 (1st Cir. 1979).

There are other special requirements for the issuance of summonses where "third party record keepers" are involved, Code Section 7609(a)(3), which are not applicable here.

In this case, the IRS would be required to comply with the "John Doe" summons provisions found in 7609(f) of the Code [7] because the IRS has not identified "the person(s) with respect to whose liability the summons is issued." 7609(f) provides as follows:

> [A "John Doe" summons may be issued] only after a court proceeding in which the Secretary establishes that—
>
> > (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

---

**7.** Although Mobil is not a "third party record keeper," as defined in 7609(a)(3), for purposes of the notice requirements of 7609(a), the IRS must comply with the "John Doe" summons provisions of 7609(f). The language of Section 7609 indicates that the third party notice provisions in 7609(a) and the "John Doe" provisions are separate requirements. § 7609(a) outlines the notice requirements which apply to any summons which meets the description in § 7609(c) and is served on "third party recordkeepers." § 7609(c) summons include all those issued under § 7602(2), with certain limited exceptions. § 7609(f), although it is titled "*additional requirement* in the case of a John Doe summons", provides that *any summons* described in subsection (c) "which does not identify the person with respect to whose liabil-

ity the summons is issued "must comply with certain other requirements. Consequently, the "John Doe" summons requirements are not limited to summonses for records which are held by "third party recordkeepers." This interpretation of Section 7609 is supported by its legislative history because the House report explaining 7609 does not indicate that John Doe summonses are merely a sub-species of summonses for records held by "third party recordkeepers," but rather the report gives separate treatment to the two types of summonses. H.Rep.No.94–1380, 94th Cong. 20 Sess. 367–74, reprinted in U.S.Code Cong. & Ad. News 1976, 2897, 3796–3803. (See *U. S. v. Reprints, Inc.*, 79–1 U.S.T.C. ¶ 9108 (N.D.Ga. 1978); *U. S. v. Brigham Young University*, 485 F.Supp. 534, 537 (D.Utah 1980).

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources. 26 U.S.C. Section 7609(f).

These procedures require only a demonstration of a "reasonable basis" for believing that a person or group of persons has violated the Internal Revenue laws, not the higher probable cause standard for an arrest or non-administrative search warrant. *U. S. v. Brigham Young Univ.*, 485 F.Supp. 534 (D.Utah 1980).

II. *Is a Right of Unilateral Inspection Under Section 6001 Consistent with the Fourth Amendment?*

■ It is a well established principle that if the selection of one of alternative constructions of a statute would involve serious constitutional difficulties, that is reason to reject that construction in favor of another. *U. S. v. Clark*, 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980). I conclude that the IRS reading of Section 6001 would raise a serious question under the fourth amendment, at least since the decision of the Supreme Court in *Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). *Barlow's* primary focus was upon the question of whether OSHA inspectors could constitutionally inspect the working areas of a business without a warrant or its equivalent. The court observed:

[A warrant] provides assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond

which limits the inspector is not allowed to proceed. *Id.* at 323, 98 S.Ct. at 1825. At this point the Court noted:

*Delineating the scope of a search with some care is particularly important where documents are involved.* Section 8(c) of the Act, 29 U.S.C. § 657(c), provides that an employer must "make, keep and preserve, and make available to the Secretary [of Labor] or to the Secretary of Health, Education and Welfare" such records regarding his activities relating to OSHA as the Secretary of Labor may prescribe by regulation as necessary or appropriate for enforcement of the statute or for developing information regarding the causes and prevention of occupational accidents and illnesses. Regulations requiring employers to maintain records of and to make periodic reports on "work-related deaths, injuries and illnesses" are also contemplated, as are rules requiring accurate records of employee exposures to potential toxic materials and harmful physical agents.

In describing the scope of the warrantless inspection authorized by the statute, § 8(a) does not expressly include any records among those items or things that may be examined, and § 8(c) merely provides that the employer is to "make available" his pertinent records and to make periodic reports.

The Secretary's regulation, 29 CFR § 1903.3 (1977), however, expressly included among the inspector's powers the authority "to review records required by the Act and regulations published in this chapter, and other records which are directly related to the purpose of the inspection." Further, § 1903.7 requires inspectors to indicate generally "the records specified in § 1903.3 which they wish to review" but "such designations of records shall not preclude access to additional records specified in § 1903.3." It is the Secretary's position, which we reject, that an inspection of *documents of this scope* may be effected without a warrant.

The order that issued in this case included among the objects and things to be inspected "all other things therein (includ-

ing but not limited to records, files, papers, processes, controls and facilities) bearing upon whether Barlow's, Inc. is furnishing to its employees employment and a place of employment that are free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees, and whether Barlow's, Inc. is complying with ..." the OSHA regulations. (emphasis supplied). *Id.* at 324 n.22, 98 S.Ct. at 1826 n.22.

In sum, the Court decided that the production of Barlow's documents was governed by: (1) § 8(c) of the Act which did not authorize inspections but required employers to "make, keep, and preserve, and make available" periodic reports on "work related deaths, injuries and illnesses", (2) § 8(a) of the Act which gives OSHA inspectors their general inspection powers which did not expressly include "records" among the items which could be inspected, and (3) 29 C.F.R. § 1903.3 (1977) which expressly gave inspectors the right to examine records. The IRS seeks to distinguish *Barlow's*, arguing that it did not involve the inspection of books and records. This contention is incorrect. The order issued by the District Court gave OSHA the right to inspect files and papers. The IRS also argues that *Barlow's* established a reasonableness standard for determining whether a search was constitutional and that the search here is more reasonable than the one contemplated by *Barlow's* because it involves the inspection of limited records in a form and place to be chosen by the employer. The fact is that the Court in *Barlow's* indicated that the focus of the constitutional scrutiny of an administrative inspection

is on whether there are "reasonable legislative or administrative standards" for conducting the inspection, *id.* at 320, 98 S.Ct. at 1824, and the reasonableness of a warrantless search depends upon the specific enforcement guarantees of *each statute.* *Id.* at 321, 98 S.Ct. at 1824. The Court was concerned that the scope of permissible inspections was not defined by the OSHA statutes and regulations. The facts of the present case present similar difficulties. Under the IRS view of Section 6001 and the regulations enacted pursuant to it, the IRS would be entitled to a warrantless inspection of a less than well-defined group of records including ones related to income tax liability which individual taxpayers are required to keep by the IRS. Treas.Reg. Section 1.6001–1(a). That the scope of the present demand is happily now limited to records which Mobil is required to keep under Treas.Reg. Section 31.6001–1, provides no support for the IRS broadly claimed right to unilaterally determine the scope of its inspection rights and to subject taxpayers who refuse its request to criminal and civil liability.

That is, if the court adopted the IRS reading of Section 6001, it would be giving to the IRS authority to inspect a wide variety of records without the judicial supervision arguably required under the fourth amendment by the *Barlow's* court. This is not to say the IRS must obtain a probable cause determination from a detached and neutral judicial officer before conducting an inspection of records, but a strong argument can be made that it must obtain "a warrant or its equivalent", 436 U.S. at 325, 98 S.Ct. at 1827.[8] The summons procedure meets this requirement.

**8.** The requirements for an administrative inspection are developed more fully in *United States v. Mississippi Power & Light Company*, 638 F.2d 899 (5th Cir.), *cert. denied* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206, 26 F.E.P. Cases (BNA) 1688 (1981). Perhaps because I share Justice Stevens' view of the textual independence of the warrant and unreasonable search clauses as expressed in *Barlow's*, with regard to records required to be maintained, I confess to being less than certain of the interests, in fact, protected in *Barlow's*. I have

difficulty in identifying privacy interests vindicated by an "administrative warrant," but left more vulnerable by a regulatory scheme that allows an employer to force a court hearing, or at least a "warrant," by refusing entry. In any event, a taxpayer could not, under the IRS construction of § 6001, refuse without penalty. And given the sweep of the records to be kept, the scope of a demanded inspection could be broad indeed. More to the point, there is a great deal of room for disagreement over the records to be so kept. And that uncertainty

*Conclusion.*

The IRS does not have authority under Section 6001 to unilaterally inspect Mobil's records concerning its employees' tax withholding (i.e. W–4 Forms and microfiche copies of salary checks and stubs for each payment of compensation). The court reaches this conclusion because (1) it appears that Congress intended to authorize such inspections of documents required to be maintained by Section 6001 only by resort to other statutorily created procedural schemes such as the summons procedures. At the least there is no compelling history to the contrary, and giving § 6001 an IRS reading would frustrate the intent of Congress in its 1976 amendment to the procedures for issue of an administrative summons; and (2) a serious constitutional question is presented by a reading of Section 6001 to authorize inspections of taxpayer records without an administrative warrant or its equivalent. See *United States v. Mississippi Power & Light Co.,* 638 F.2d 899 *cert. denied* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981).

The IRS cannot rely upon § 6001 as a grant of power to inspect but must look to other sources such as its authority to seek an administrative summons under Section 7602 *et seq.* Reliance upon the summons procedures would here require the IRS to comply with the "John Doe" summons requirements found in Code Section 7609(f) because it is investigating the tax liability of unidentified individuals. IRS has refused to rely upon any right to inspect Mobil's records it may have under any other provision of law including Section 7602–7610. IRS seeks, instead, an order *under* § 6001 compelling access. While the IRS has not sought to impose any penalty upon Mobil for refusing access to its records without a summons and the effect of the hearings to date may approximate "an equivalent to a warrant" the IRS is not entitled to the declaration it seeks. The IRS refuses to rely upon its summons powers and the in-

quiries under § 7602 *et seq.* have not been made. Specifically, the IRS relies only upon 26 U.S.C. § 7402(a). That statute gives this court jurisdiction to order compliance with other Code provisions, including § 6001. It does not itself create a right to inspect. There is no contention that Mobil has failed to maintain required records or file requested reports or returns. It follows that § 7402(a) provides no relief here for the IRS.

Accordingly, the respondent's motion for summary judgment is GRANTED. The petitioner's cross-motion for summary judgment is DENIED.

---

breeds a risk of giving up records over which a taxpayer did have a justifiable expectation of privacy. A scheme that so fails is "unreasonable" in my view. And under both views expressed in *Barlow's,* the IRS construction creates fourth amendment problems.