Mark C. UNGARO, individually and on behalf of all other Dealer/Employees, etc., Plaintiffs,

v.

DESERT PALACE, INC., a Nevada corporation, doing business as Caesars Palace, and Unknown Agents of Caesars Palace, et al., Defendants.

No. CV S 88–838 RDF.

United States District Court,
D. Nevada.

Nov. 17, 1989.

George P. Kelesis, Las Vegas, Nev., for plaintiffs.

William A. Maddox, U.S. Atty., Las Vegas, Nev., and Thomas D. Sykes and Mark G. Fraase, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for all defendants except Desert Palace, Inc., Dan Cassella, Patrick Cruzen, Bruce Aguilera and Brian Menzell.

Paul R. Hejmanowski of Lionel, Sawyer & Collins, Las Vegas, Nev., for defendants Desert Palace, Inc., Dan Cassella, Patrick Cruzen, Bruce Aguilera and Brian Menzell.

## ORDER GRANTING MOTIONS OF DESERT PALACE, INC., DAN CASSELLA, BRUCE AGUILERA, BRIAN MENZELL, AND PAT CRUZEN TO DISMISS

ROGER D. FOLEY, Senior District Judge.

### INTRODUCTION

This order concerns Defendants Desert Palace, Inc., a Nevada corporation dba Caesars Palace Hotel & Casino ("Caesars"), and Dan Cassella, Bruce Aguilera, Brian Menzell, and Pat Cruzen (collectively referred to as "Caesars' Employees"), and their motions (motions #1 and #9)[1] to

---

1. PENDING MOTIONS AND DOCKET REFERENCES

1. Defendants Desert Palace, Cassella, Aguilera and Menzell's Motion to Dismiss, filed 11/23/88.

2. Defendant USA's Motion to Dismiss Internal Revenue Service, Does and Roe Corporations, filed 12/21/88.

3. Defendant USA's Motion to Defer Class Determination, filed 12/21/88.

4. Defendant USA's Motion to Dismiss with Prejudice for Failure to State a Claim, or, in the Alternative, for Partial Summary Judgment, filed 12/21/88.

5. Defendants Jones, Burns and Durfee's Motion to Dismiss with Prejudice for Failure to State a Claim or, in the Alternative, for Partial Summary Judgment, filed 12/21/88.

6. Defendant USA's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed 12/21/88.

7. Defendant USA's Motion to Strike Jury Demand with Respect to First, Second and Fourth Causes of Action, filed 12/21/88.

8. Defendants Jones, Burns and Durfee's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed 12/21/88.

dismiss Plaintiff's First Amendment to Complaint for Damages (deemed by the court to be First Amended Complaint) ("Complaint") for failure to state a claim upon which relief may be granted. (See Docs. Nos. 5, 24.)

This order also concerns Defendants Dick Jones, Kenneth Green (collectively referred to as "individual federal defendants") and their motions (motions # 5 and # 10) to Dismiss with Prejudice for Failure to State a Claim or in the Alternative for Partial Summary Judgment (see Docs. Nos. 15, 29).

## FACTS

On October 20, 1988, Plaintiff, a former employee of Caesars, filed suit against Caesars and Caesars' Employees (hereinafter referred to collectively as "Caesars") for producing certain information pursuant to a summons they received from co-defendant Internal Revenue Service ("IRS"). The IRS allegedly used the information obtained to monitor a 1981 dealer amnesty program. In turn, that monitoring is alleged to have led to prosecution of a number of dealers. Plaintiff asserts that he and all dealers prosecuted by the IRS for violation of tax laws have been injured by Caesars' compliance with the IRS summons.

Plaintiff alleges that on or about September 3, 1981, the IRS issued a courtesy summons to Caesars requesting the names, addresses and social security numbers of dealers. On or about September 23, 1981, the IRS served Caesars an Information Document Request stating that the information requested was for an employment tax audit of Caesars. Pursuant to the issuance of this summons and document information request, Caesars supplied information to the IRS.

Plaintiff argues that by responding to the IRS summons, Caesars: (a) violated 26 U.S.C. § 7609 (which establishes procedures for the IRS in issuing third-party tax summonses); (b) conspired and continued to conspire to violate that statute (cause of actions one and two); (c) violated the Racketeer Influenced and Corrupt Organization Act ("RICO") by committing and conspiring to commit mail and wire fraud under Title 18 of the United States Code (causes of action five and six) (d) violated 26 U.S.C. § 6103 by disclosing confidential information from a tax return (cause of action four), and (e) violated the Fourth Amendment protection against unreasonable search and seizure and the Fifth Amendment Due Process Clause of the U.S. Constitution (cause of action three).

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. *Id.* The trial court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set facts in support of his claim which would entitle him to relief." *Id.*

This court will apply this standard for dismissal of complaint to Plaintiff's various causes of action.

### II. *Applicability of 26 U.S.C. § 7609 to the Instant Action*

Although Plaintiff alleges several causes of action against Caesars, the critical element of the complaint is that Defendants violated 26 U.S.C. § 7609 by complying with an IRS summons issued in violation of procedural requirements under that section. Plaintiff's first two causes of action involve allegations of a conspiracy and continuation of the conspiracy to "violate" and

9. Defendants Desert Palace, Cassella, Aguilera, Menzell and Cruzen's Motion to Dismiss, filed 1/3/89.

10. Defendant Green's Motion to Dismiss with Prejudice for Failure to State a Claim or, in the Alternative, for Partial Summary Judgment, filed 1/30/89.

11. Defendant Green's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed 1/30/89.

"circumvent" the provisions of 26 U.S.C. § 7609. Caesars asserts that neither § 7609(a) nor (f) procedural requirements are applicable to this case.

**A. § 7609(a)**

■ When an IRS summons is served on a "third-party record keeper," the taxpayer to whom the records named in the summons relate is entitled to notice of summons, and may institute a proceeding to quash the summons or intervene in the enforcement proceeding. 26 U.S.C. § 7609(a)–(b) (Supp.1988). The Ninth Circuit has held that "[t]hird-party records are those containing data about transactions between the taxpayer and parties other than the summoned party. *Rapp v. C.I.R.*, 774 F.2d 932, 934 (9th Cir.1985).

The summons in question was issued to Defendant Caesars and sought employment records: the name, address and social security numbers of Caesars Palace dealer/employees. These data pertain to transactions between Plaintiff and the summoned parties. These data are not "third party records" within the meaning of section 7609(a). *See Rapp*, 774 F.2d at 934 (IRS summons seeking records pertaining to taxpayer's employment and transactions between him and summoned parties were not "third-party records," within meaning of 26 U.S.C. § 7609(a)).

Section 7609(a) procedures, therefore, are inapplicable to Plaintiff's case.

**B. § 7609(f)**

■ Under § 7609(f), the IRS cannot serve a summons seeking information on the tax liability of unnamed taxpayers without obtaining prior judicial approval at an ex parte proceeding. *Tiffany Fine Arts, Inc., et al. v. United States*, 469 U.S. 310, 313, 105 S.Ct. 725, 726, 83 L.Ed.2d 678 (1985). The IRS, in this case, did not obtain prior judicial approval. Defendant argues that the statute and legislative history indicate that § 7609(a)(3) "third-party record keeper" definitional requirements apply to the § 7609(f) John Doe provisions as well as to § 7609(a). If Defendant's contention is correct, § 7609(f) does not apply in this case because Caesars is not a "third-party record keeper."

Defendant's contention, however, does not logically follow from the statutory language. Section 7609(a) outlines the notice requirements which apply to any summons which meets the description in § 7609(c) and is served on "third party record keepers." Subsection (f) describes a John Doe summons as "*[a]ny summons* described in subsection (c) which does not identify the person with respect to whose liability the summons is issued (emphasis added)." 26 U.S.C.A. § 7609(f) (Supp.1988). Subsection (c) includes "summons ... issued under paragraph (2) of section 7602(a)," a section under which the Secretary of the IRS is authorized to summon "any ... person the Secretary may deem proper." 26 U.S.C.A. § 7602(a)(2) (Supp.1988). No statutory language explicitly states that § 7609(f) cases are limited to cases included under § 7609(a) or those involving "third party recordkeepers." The first sentence of subsection (a)(3) reads: "For purposes of this subsection, the term 'third-party record keeper' means—." Congress' use of the words "this subsection" in subsection (a)(3) indicates to some extent that the definitional requirements were intended to be applicable only to subsection (a) and not subsection (f).

The few courts which have had occasion to rule on the issue have concluded that issuance of John Doe summonses by the IRS is not restricted to third-party recordkeepers defined under § 7609(a)(3). *United States v. Mobil Corp.*, 543 F.Supp. 507 (N.D.Tex.1981); *United States v. Brigham Young University*, 485 F.Supp. 534, (D.Utah 1980); *rev'd on other grounds*, 679 F.2d 1345 (10th Cir.1982) (Issue regarding whether 3rd Party recordkeeper requirement applied to § 7609(f) was not raised on appeal); *United States v. Reprints, Inc.*, 79–1 U.S.T.C. § 9108, 1978 WL 1238 (N.D.Ga.1978).

In *Mobil Corp.*, a case involving the right of the IRS to inspect company employment records, the court observed that the company was not a third-party recordkeeper for the purpose of notice requirements under 26 U.S.C.S. § 7609(a) but stated that the IRS nonetheless had to comply with the "John Doe" summons require-

ments of § 7609(f). 543 F.Supp. at 516, fnte. 7. The court made the above-mentioned statutory analysis and concluded that:

> ... [t]he language of Section 7609 indicates that the third party notice provisions in 7609(a) and the "John Doe" provisions are separate requirements.... This interpretation of section 7609 is supported by its legislative history because the House report explaining 7609 does not indicate that John Doe summonses are merely a sub-species of summonses for records held by "third party recordkeepers," but rather the report gives separate treatment to the two types of summonses.

*Id.*

Defendant cites *Tiffany Fine Arts, Inc. v. United States,* 469 U.S. 310, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985) and *United States v. Samuels, Kramer and Company,* 712 F.2d 1342 (9th Cir.1983). These cases, however, did not deal with the specific issue of whether § 7609(f) requirements are limited to summonses issued to "third party recordkeepers." Defendant also contends that Congress' use of the term "third-party recordkeeper" in other subsections of § 7609, subsections (e) and (i), establishes that the definition of a third-party recordkeeper is not limited to subsection (a). Recently, in the Technical and Miscellaneous Revenue Act of 1988, P.L. 100–647, 102 Stat. 3342, in sec. 1015(1)(2)(A) of the bill Congress substituted "the summoned party" for "the third-party recordkeeper" in subsec. (i)(4) which specifically deals with John Doe summons, and added "and summoned party," after "recordkeeper" in subsection (e). By this act, Congress made clear its intent that situations under subsections (a) and (f) must be given separate treatment, "third-party recordkeeper" referring to subsec. (a) cases, and the "summoned party" term referring to subsec. (f) cases.

Sec. 7609(f) applies to this case. Plaintiff may allege a § 7609(f) violation as a basis for its constitutional tort, civil conspiracy and RICO claims against Caesars.

### III. *RICO Conspiracy Claim*

Plaintiff asserts a private cause of action for treble damages under 18 U.S.C. § 1964(c) based on injury to his person by reason of a violation of 18 U.S.C. § 1962. Plaintiff filed a complaint alleging a conspiracy to violate § 1962(c) prohibited under 18 U.S.C. § 1962(d) which states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection(s) ... (c) of this section." 18 U.S.C.A. § 1962(d) (1984).

Liability under § 1962(c) requires: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In order to establish a pattern of racketeering activity, a plaintiff must allege two or more related predicate acts of racketeering activity. *Sun Savings and Loan Association v. Dierdorff,* 825 F.2d 187, 193 (9th Cir.1987). Title 18 U.S.C. § 1961(1) defines "racketeering activity" to include any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). 18 U.S. C.A. 1961(1) (Supp.1988).

This court must determine whether the alleged conspiracy in fact involved the violation of a substantive RICO provision. Here, Plaintiff alleges violation of mail and wire fraud statutes.

### A. Mail Fraud

To allege a violation of mail fraud statute, it is necessary to show, *inter alia,* that: (1) the defendants formed a scheme or artifice to defraud; (2) the violative act was perpetuated "for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C. § 1341 (1984). Use of the mail with false or fraudulent pretenses for the specific purpose of causing pecuniary loss must be alleged. *First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 546–47 (9th Cir.1988); *see McNally v. United States,* 483 U.S. 350, 356–61, 107 S.Ct. 2875, 2879–81, 97 L.Ed.2d 292, 300–02 (1987) (Section 1341 is limited to scope to the protection of property rights, and does not refer to the intangible right of the

citizenry to have public officials perform their duties honestly).

Plaintiff fails to allege that Caesars mailed information to the IRS for the purpose of obtaining from dealers money or property through false pretenses. Plaintiff, instead, has alleged a nonpecuniary motive on Defendants' part: "Caesars wanted to cooperate with the IRS but wanted to avoid bad employer/employee relations." Complaint, para. 100. Generally, employers have a distinct interest in facilitating their employees' unhampered performance of job duties. On the alleged facts, Plaintiff can in no way claim Caesars has benefitted pecuniarily from investigations of its employee-dealers by the IRS.

Plaintiff, therefore, has not alleged sufficient facts to support a conspiracy to commit a mail fraud violation.

### B. Wire Fraud

■ Title 18 U.S.C. § 1343 pertaining to fraud by wire also requires that the violative act under that section be perpetuated "for obtaining money or property." This statutory language is identical to the language under § 1341 (relating to mail fraud). The pertinent § 1341 provision led the court in *First Pacific* to conclude that a specific purpose to cause pecuniary loss must be alleged under the mail fraud statute. The same conclusion applies to the wire fraud statute by analogy.

Because Plaintiff fails to allege a specific purpose to cause pecuniary loss, the civil RICO claim cannot be based on the alleged violation of the wire fraud statute. Plaintiff has not properly alleged the mail and wire fraud violations, its two purported predicate acts of racketeering activity. Plaintiff's civil RICO claim, therefore, is dismissed on the 12(b)(6) motion. Because leave to amend would be futile in that the requisite specific purpose cannot be shown, this court, in its discretion, grants the individual federal defendants their motion to dismiss the RICO claim, with prejudice. *See Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983) (Leave to amend may be properly denied, among other reasons, for futility of amendment).

### IV. Claim Under 26 U.S.C. § 6103

■ Plaintiff alleges that Caesars illegally disclosed tax return information in violation of 26 U.S.C. § 6103.

Section 6103 applies to bar disclosure of tax returns or return information by an "officer or employee of the United States," "or of any State or local agency," or "(3) ... [of an] *other person* ... who has had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (2) or (4)(B) of subsection (m), or subsection (n) (emphasis added)." 26 U.S.C.A. § 6103 (Supp.1988).

Defendant Caesars is not covered by any of three categories of § 6103(a). Subsection 6103(a)(3)'s language "other person" applies only to shareholder corporation contexts, the Secretary of the Treasury and the Secretary of Education. *See* 26 U.S.C.A. § 6103(e)(1)(D)(iii), (m)(2) and (4)(B), and (n). Furthermore, "the statute [§ 6103] does not require a court order before a taxpayer or some third party can provide tax information to a government agency." *United States v. Wencke*, 604 F.2d 607, 612 (9th Cir.1979). In *Phelps v. U.S.*, 831 F.2d 897 (9th Cir.1987), the court noted that Congress in enacting § 6103 intended § 6103 to establish a "comprehensive scheme for controlling release *by the IRS* of information received from taxpayers to discrete identified parties, subject to specified conditions." 831 F.2d at 895.

Plaintiff's fourth cause of action, therefore, is dismissed because it fails to state a claim upon which relief may be granted.

### V. Constitutional Claims

In this cause of action, Plaintiff alleges that Caesars and Caesars' Employees violated the Fifth Amendment due process and Fourth Amendment privacy rights of dealers by responding to the IRS summons. Plaintiff's claims present a variation of what is commonly called a *Bivens* action. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (The court held that a private party who had been subjected to unlawful search and seizure may bring a damage action against the federal agents whose unconstitutional

conduct led to the injury). The rule of *Bivens* has since been applied to remedy violation of 5th Amendment constitutional rights by federal authorities. *See, Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). In this circuit, a *Bivens* claim may be stated against private party defendants, provided that the defendant engaged in federal action. *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1338 (9th Cir.1987).

Defendant asserts that Plaintiff has no judicially cognizable Fourth Amendment interest nor the requisite property interest to support a Fifth Amendment Due Process claim.

## A. Fourth Amendment Claim

■ Internal Revenue Service summonses issued to a third-party recordkeeper do not violate the Fourth Amendment. *Harris v. United States I.R.S.,* 758 F.2d 456, 457 (9th Cir.1985) (citing *United States v. Miller,* 425 U.S. 435, 440, 96 S.Ct. 1619, 1622, 48 L.Ed.2d 71, 77 (1976)). In *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the United States Supreme Court held that the Fourth Amendment did not allow an employee to challenge an IRS summons of employment records held by his employer. (*See also United States v. Carter,* 568 F.2d 453, 455 (5th Cir.1978) (employee had no interest in his employer's employment records and no standing to challenge their production)). Referring to employee-taxpayer Donaldson's Fourth Amendment claim, the Court stated: "... the question appears to have been settled long ago when the Court upheld, against Fourth Amendment challenge, an internal revenue summons issued under the Revenue Act of 1921 and directed to a third party bank [cities omitted]." *Donaldson, Id.* at 522, 91 S.Ct. at 538, 27 L.Ed.2d at 584.

Plaintiff's Fourth Amendment claim therefore, is dismissed on the grounds stated in *Harris* and *Donaldson.*

## B. Fifth Amendment Claim

■ Plaintiff has alleged that Caesars violated the 5th Amendment due process rights of dealers by responding to the IRS summons. As a threshold requirement to any due process claim, the Plaintiff must show that he has a protected property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569–571, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Kraft v. Jacka,* 872 F.2d 862, 866 (9th Cir.1989).

Property rights protected by procedural due process "are not created by the Constitution. Rather, they are created and their dimensions defined by existing rules and understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. The court in *Roth* further stated:

> To have a property interest in a benefit, a person clearly must have *more than an abstract need or desire* for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it.

*Id.* (emphasis added).

In *Ponsford v. United States,* 771 F.2d 1305 (1985), the Ninth Circuit held that an employee has no proprietary interest in employment records in the possession of his employer, and therefore held that said employee lacked standing to quash an IRS summons against his employer. *Id.* at 1308. In *Ponsford,* the court cited *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), as authority for stating that "[w]here the taxpayer has no proprietary interest in the [employment] records sought, he lacks standing to quash the [IRS] summons." *Ponsford,* 771 F.2d at 1308.

In *Donaldson,* the taxpayer had obtained temporary restraining orders enjoining the employer and the employer's accountant from complying with summonses. After the United States petitioned for judicial enforcement of the summonses, the taxpayer relying on Rule 24(a)(2) of the F.R.C.P. filed motions to intervene in the enforcement proceedings, on the grounds that the summonses were invalid because not within the scope of § 7602, in that the sole purpose of the investigation was to obtain evidence of criminal violations. The United States Supreme Court affirmed the district court's denial of the motions to intervene

and its granting of an order to comply with summonses because the employee lacked an interest relating to the property or transaction which is subject to the action; the employee lacked "a significantly protectable interest" in the records. 400 U.S. at 531, 91 S.Ct. at 542, 27 L.Ed.2d 580.

The Court recognized that the taxpayer had an interest in the records because they presumably contained details of payments from his employer to him "possessing significance for federal income tax purposes." *Id.* Nonetheless, since this interest is "nothing more than a desire" by the taxpayer to overcome his employer's "willingness, under summons to comply and to produce records," the Court held: "This interest cannot be the kind contemplated by Rule 24(a)(2) ...," when it speaks of a "significantly protectable interest." *Id.* The Court concluded that the "material sought ... consist[ed] only of Acme's routine business records in which the taxpayer has no proprietary interest of any kind...." *Id.*

The remaining question for this court is whether a "propietary interest" determined for purposes of standing to quash summons in *Ponsford,* and determined for purposes of intervention in *Donaldson,* is equivalent to "property interest" for purposes of the Fifth Amendment Due Process Clause. Based on the similar language used in each case, failure to meet the "significantly protectable interest" standard can properly be understood to mean failure to meet the "property interest" standard enunciated in *Roth.* The language in *Donaldson* that the employee has "nothing more than a desire" is sufficiently close to the *Roth* language: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

This court can properly deem failure of the *Donaldson* test to be dispositive of the the property interest element. Because no property interest in the summoned records exists for purposes of procedural due process, Plaintiff's Fifth Amendment claim may be dismissed on the 12(b)(6) motion.[2]

Given the futility of amendment, this court grants the individual federal defendants' motion to dismiss the constitutional tort claims, with prejudice.

## VI. *Civil Conspiracy Claim*

### A. Federal Claims

■ Plaintiff's first and second causes of action relating to conspiracy and con-

---

**2.** This conclusion stands unless another basis for a significant protectable interest exists under *Donaldson* and applies to this case.

In *Donaldson,* the court implied that a taxpayer may have a "significant protectable interest" to intervene where he has a privilege or claims abuse of process. *United States v. Manchel, Lundy and Lessin,* 477 F.Supp. 326, 329 (1979). The court in *Donaldson* stated that:

And the taxpayer, to the extent that he has such a protectable interest, as, for example, by way of privilege or to the extent he may claim abuse of process, may always assert that interest or that claim in due course at its proper place in any subsequent trial [taking place after the enforcement proceeding].

*Id.*

This court must determine whether Plaintiff has alleged enough facts to show a sufficient proprietary interest as would justify intervention to raise an abuse of process defense. *U.S. v. Manchel, Lundy and Lessin,* 477 F.2d at 332. This "proprietary interest," if shown, may then support Plaintiff's showing of "a property interest" under the Fifth Amendment claim.

Plaintiff, however, cannot claim an abuse of process because no court proceedings were in-

stituted to enforce the summons, as was the case in *U.S. v. Manchel, Lundy and Lessin.* An essential element of an abuse of process cause of action is "'... the misuse of the power of the *court;* it [the abuse of process tort] is an act done in the name of the court and under its authority for the purpose of perpetrating injustice ... [W]e find no case extending the definition of 'process' to a proceeding that in no way ... rests upon the authority or jurisdiction of the court (emphasis added).'" *Foothill Ind. Bank v. Mikkelson,* 623 P.2d 748 (Wyo., 1981) (quoting *Meadows v. Bakersfield Sav. & Loan Assoc.,* 250 Cal.App.2d 749, 753 59 Cal.Rptr. 34, 37 (1967)). See *Ramsey v. Leath,* 706 F.2d 1166 (11th Cir.1983); *McCarthy v. Kleindienst,* 741 F.2d 1406, 1414 (C.A.D.C.Cir.1984).

The courtesy summons and information document request rested solely on the authority of the IRS. No summons enforcement proceeding requiring a court order was involved.

Plaintiff, therefore, has failed to show sufficient proprietary interest to support a Fifth Amendment challenge of the summons requesting taxpayer's employment records from his employer. His Fifth Amendment claim may be dismissed on this basis.

tinuing conspiracy and cover-up do not "arise under" any specific federal law or constitutional provision. Title 26 U.S.C.A. § 7609 imposes solely procedural requirements on the IRS in issuing a summons to a third-party recordkeeper; it imposes no obligation or duty on the recordkeeper in responding to that summons. *See* 26 U.S. C.A. § 7609(a–f) (Supp.1988). The § 7609(f) provisions give standing only to a district court and Congress intended the court to oversee IRS compliance with § 7609(f) by means of the ex parte procedure, but § 7609(f) does not provide unnamed taxpayers with any opportunity to assert any "personal defenses," such as attorney-client or Fifth Amendment privileges that might be asserted under §§ 7609(a) and (b). *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 321, 105 S.Ct. 725, 730, 83 L.Ed.2d 678, 688 (1985). Congress did not intend to enlarge the substantive rights of taxpayers by enacting § 7609(f). *Samuels, Kramer & Co.*, 712 F.2d 1342, 1346 (9th Cir.1983). Since Congress did not intend § 7609(f) to be enforced by unnamed taxpayers and provided other means of enforcement, Plaintiff has no right to a private cause of action for damages resulting from the alleged violation of § 7609(f). *California v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101, 110 (1981).

### B. Pendent State Claims

Civil conspiracy is recognized as a tort in Nevada. *Aldabe v. Adams*, 81 Nev. 280, 402 P.2d 34, 37 (1965). A federal district court can exercise jurisdiction over state claims appended to federal claims if: 1) the federal claims are of sufficient substance to confer federal jurisdiction; and 2) the federal and state claims arise out of a "common nucleus of operative fact [which the plaintiff] would ordinarily be expected to try ... in one judicial proceeding...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 227–28 (1966).

The same transaction test requirements are met here because the RICO and due process claims arose out of the same facts of alleged violation of § 7609(f) as those giving rise to the civil conspiracy claim.

This court has for the above-mentioned reasons dismissed Plaintiff's federal claims on Defendant Caesars' 12(b)(6) motion. Plaintiff's remaining two claims are grounded in state law.

A district court's exercise of pendent jurisdiction over state law claims arising from the same set of operative facts that support a federal claim is a matter of discretion. *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir.1989); *Les Shockley Racing, Inc., et al. v. National Hot Rod Assoc.*, 884 F.2d 504 (9th Cir.1989). When, as here, the court dismisses the federal claims leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720, 729–30, (1988); *Les Shockley Racing, Inc., supra*. Dismissal of the federal claims, however, is not a determinative factor; other factors are: 1) the amount of judicial time and energy invested, 2) the difficulty of the state claim, and 3) the amount of additional time and energy necessary for its resolution. *Rippe v. F.C.C.*, 528 F.2d 771 (6th Cir.1976); *See Meyer v. California and Hawaiian Sugar Co.*, 662 F.2d 637, 640 (9th Cir.1981).

An additional factor is whether there is a substantial possibility that a subsequent state court suit on the claim is time-barred. *Kuhn v. Nat. Ass'n of Letter Carriers, Branch 5*, 523 F.2d 767, 771 (8th Cir.1976); *Moses v. Kenosha County*, 826 F.2d 708, 710 (7th Cir.1987). The rationale for inclusion of this factor is as follows: "... when ... a plaintiff has pursued his federal claim in good faith and with dilligence, his pendent claim should not be foreclosed by the passage of the time required to dispose of the federal claim." *O'Brien v. Continental Illinois Nat. Bank & Trust*, 593 F.2d 54, 65 (7th Cir.1979).

### 1. Statute of Limitations Bar Factor

■ In this case, Plaintiff's case appears to be time-barred. The rationale for inclusion of this factor in the analysis, however, does not apply to this case.

The tort of civil conspiracy is recognized in Nevada, and a suit for damages based

thereon is permissible. *Aldabe v. Adams*, 81 Nev. 280, 402 P.2d 34, 37 (1965). The bar of limitations is four years from the date the cause of action accrues. *Id.* It is at the time of injury that the right to relief by action arises; the statute, therefore, begins to run at the moment such injury occurs. 81 Nev. 280, 402 P.2d at 38.

Plaintiff bases his action on injuries incurred because of:

> lost economic opportunities, by suffering ... emotional distress and by incurring costs and fees of defending their property interests in the audits, examinations and criminal investigations of the IRS; together with the harassment and embarrassment and wrongful disclosure of taxpayer information following liens and levies filed and served by Defendant, IRS, and threats of Defendant, Caesars ..., that members of the Class would be terminated if the levies of the IRS were not resolved.

Complaint, para. 39. The injury of which Plaintiff complains basically consists of the economic and noneconomic costs of defending his "property interests" in IRS audits, examinations, and criminal investigations of dealers. This court must determine the date on which Plaintiff became aware of the audits and investigations because that would be near the date Plaintiff began to incur the alleged emotional distress and other costs in defending its interests.

An audit involves the examination of Plaintiff's own books, vouchers and records. Given the nature of audits and criminal investigations, Plaintiff must have become aware of the audits and investigations and thereby incurred his injury at or near the time the audits began.

Plaintiff does not specify the date when the audits and criminal investigations began. There are no allegations regarding when Plaintiff became aware of the audits thereby indicating when Plaintiff began to incur costs of defending its interests. Plaintiff alleged that "[f]or the year 1981 and all tax years thereafter, the IRS began monitoring compliance ... and began auditing employee dealers of Caesars." Complaint, para. 27. According to the "factual summary" section of "Exhibit 'A,'" an IRS memorandum attachment to the complaint which the Plaintiff incorporated by reference to the complaint, Complaint, para. 21, the IRS served summonses and/or IDR's (Information Document Requests) on Caesars "for the purpose of monitoring compliance with the amnesty program and to begin the audit of the dealers that were not complying including the subject criminal cases" in "1982–1983."

The initial complaint was filed on October 20, 1988. Plaintiff may not recover if the injury occurred before October 20, 1984. Taking the best scenario for Plaintiff, auditing began in 1982–1983 Although Plaintiff in its *Opposition to Motion to Dismiss* asserts that he did not know of the injury complained of prior to October 20, 1984, nowhere is this allegation contained in the Complaint. Furthermore, the Plaintiff became aware of the threat of audits and possible litigation upon receipt of an October 15, 1981 letter from the IRS to dealers discussing the willingness of the IRS to forgive past tax violations in exchange for present compliance under one of several proposed plans. *Letter from the IRS to Dealers*, (October 15, 1981) (Complaint, Exhibit C incorporated by reference).

Plaintiff's civil conspiracy claim, therefore, is probably time-barred from state court because it accrued before the four-year statute of limitation. Despite this finding, dismissal of Plaintiff's state claim is proper because Plaintiff's case is not time-barred as a result of "the passage of time required to dispose of the federal claim." *O'Brien*, 593 F.2d at 65. Generally, dismissal which forecloses a plaintiff from litigating his claim because of a time-bar "works injustice to the plaintiff ... [when] although he has brought his suit in a timely manner, he is time-barred from pressing his case." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Here, Plaintiff has not brought his suit in a timely manner; Plaintiff's case was time-barred as of the time it was filed in federal court.

Plaintiff may argue that new overt acts causing damage and constituting new causes of action for civil conspiracy occurred after October, 1984, thereby making the time-bar a result of "the passage of

time required to dispose of the federal claims." The mere possible existence of these new overt acts not clearly alleged by Plaintiffs, however, does not amount to a compelling reason for this court to exercise pendent jurisdiction. The values of comity and fairness are not prejudiced by this decision.

### 2. Judicial Economy Factors

■ This is not a case in which dismissal of the pendent claim after dismissal of the federal claims is unnecessary because 1) litigants have spent considerable time on the pendent claims before the federal claims are dismissed, or 2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort. *See Portland Fem. Women's H. Ctr. v. Advocates For Life*, 681 F.Supp. 688 (D.Or.1988).

In *Portland*, the court exercised pendent jurisdiction after concluding that: 1) the parties had invested a substantial amount of time and resources in litigation and preparation trial; 2) the case had been pending

### 3. PLEADING CIVIL CONSPIRACY

Plaintiff has not sufficiently pled the requisite elements of a civil conspiracy.

An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Collins v. Union Federal Sav. & Loan*, 99 Nev. 284, 662 P.2d 610, 622 (1983) (citing *Wise v. Southern Pacific Co.*, 223 Cal.App.2d 50, 35 Cal.Rptr. 652 (1963) and *Bliss v. Southern Pacific Co.*, 212 Or. 634, 321 P.2d 324 (1958)). To state a cause of action for conspiracy, the complaint must allege: 1) the formation and operation of the conspiracy; 2) the wrongful act or acts done pursuant thereto; and 3) the damage resulting from such act or acts. *Wise*, 223 Cal.App.2d 64–65, 35 Cal.Rptr. 652.

The *sine qua non* of a conspirational agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective. *Schick v. Bach*, 193 Cal.App.3d 1321, 1329, 238 Cal. Rptr. 902, 907 (1987). The alleged facts must show either expressly or by reasonable inference that Defendant had knowledge of the object and purpose of the conspiracy, that there was an agreement to injure the Plaintiff, that there was a meeting of the minds on the objective and course of action, and that as a result one of the defendants committed an act resulting in the injury. *Id.*, 238 Cal.Rptr. at 907.

for one year and nine months; 3) the court had decided many motions and had held three evidentiary hearings on a variety of issues; 4) the court had entered a preliminary injunction order which had been appealed, and 5) the court had entered a number of contempt orders. 681 F.Supp. at 691–92. An examination of the history of the present litigation does not present anything close to the compelling scenario in support of the exercise of federal jurisdiction over state law claims shown in *Portland*.

■ Plaintiff's case has been pending for nine months less than the case in *Portland* (one year), but unlike the Oregon District court, this court has not committed substantial judicial resources to Plaintiff's case such that it would be contrary to values of judicial economy and fairness to dismiss Plaintiff's claim. In addition, a trial of Plaintiff's civil conspiracy claim could involve an appreciable additional amount of judicial resources and time of this court in the unclearly stated area of civil conspiracy tort law.[3]

*1. Intent to Aid in Accomplishment of Unlawful Objective*

Plaintiff's allegation that defendants circumvented § 7609(f) ex parte procedures applicable to third-party summonses involving unnamed taxpayers is intended to furnish the requisite "unlawful objective."

Although the summons was issued in violation of § 7609(f), Caesars cannot be said to have intended the accomplishment of such a violation. In furnishing the summoned information, Caesars intentionally complied with an allegedly unlawful summons. It does not follow that Caesars' compliance shows that Caesars "intended," by some concerted action, the accomplishment of any purported § 7609(f) violation. Indeed, violation of § 7609(f) could only have occurred upon issuance by the IRS, not upon compliance of Caesars. *See* 26 U.S.C.A. 7609(f) (Supp.1988). Congress intended § 7609 rules as a source of protection against abuse by the IRS of its power to issue summons, not as a protection against acts of summoned parties. *See Tiffany Fine Arts Inc. v. United States*, 469 U.S. 310, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985).

Plaintiff has not alleged any fact indicating any involvement or action on Caesars' part prior to issuance of the unlawful summons. The first alleged act of Caesars was its refusal to provide the requested information after issuance of the courtesy summons. No intent on Caesars' part to intentionally aid the IRS in violating § 7609(f) can reasonably be inferred from these alleged facts.

Plaintiff's mere allegation of a § 7609(f) violation, does not suffice to adequately plead the requisite defendant intent to accomplish an unlawful objective.

**2. Purpose to Harm**

In addition, Plaintiff has not alleged the requisite "purpose to harm."

In *Bliss v. Southern Pacific Co.*, 212 Or. 634, 321 P.2d at 327 (1958), the court stated that:

[t]he primary purpose of a conspiracy must be to cause injury to another.... So long as the object of the combination is to further its own fair interest or advantage, and not the injury of another, its members are not liable for any injury which is merely incidental.

The purpose requirement is related to what is referred to as a "malice" requirement which "... does not mean merely ill will. It means the intentional doing of an injurious act without justification or excuse." *Bliss*, 212 Or. 634, 321 P.2d at 328. An act may also be the basis for a civil conspiracy when, although done without a direct intention to injure another, it is "done to benefit the conspirators, [and] its natural and necessary consequences is the prejudice of the public or the oppression of individuals. *Hotel Riviera, Inc. v. Short*, 80 Nev. 505, 396 P.2d 855, 859–60 (1964).

**a) Intent to Injure**

In this case Plaintiff has not alleged that Caesar's act of compliance with IRS summons, or Caesar's subsequent arrangement with the IRS for it to issue an Information Document Request falsely stating the existence of an employee tax audit, was done by Caesar with a purpose to harm Plaintiff. Instead, Plaintiff has alleged that Caesar's purpose was to:

provide information to the IRS without harming Caesars' relationship with the employees instead of protecting rights of the employees and of requiring that the proper procedures of the Internal Revenue Code ... (IRC) ... be complied with by the IRS."

Complaint, para. 25.

Merely because Caesars did not choose to protect its employees' rights by requiring proper IRS procedures does not reasonably lead one to conclude that it had a "purpose to harm" the employees. On the contrary, Plaintiff's allegation that Caesars acted as it did in order to avoid bad employer/employee relations reasonably implies a lack of intent to injure the employees. A person seeking to have good relations with someone usually does not also intend to injure that other person since injury to that other person would hamper good relations.

Plaintiff makes few other direct allegations of Caesars' subjective intent. Plaintiff alleged in paragraph 37 of his Complaint: "The Defendants knowingly and willfully *conspired* among themselves to deliberately and intentionally violate and circumvent the 'John Doe Summons' provisions ... (emphasis added);" and that "... Caesars ... [knew] that it [the information] was obtained by deception and for the sole purpose of auditing and monitoring numerous unknown and unnamed taxpayers." Complaint, para. 60.

It cannot be reasonably inferred from Caesars' knowledge that numerous current employee taxpayers would be monitored and audited as a result of its compliance with IRS summons, that Caesars had a "purpose to harm" its own employees by complying. This is particularly true in light of Plaintiff's contradictory allegation that Caesars' motive was to cooperate with the IRS without harming relations with its employers, thereby implying the absence of a primary purpose to injure the employees.

In *Schick v. Bach*, 193 Cal.App.3d 1321, 238 Cal.Rptr. 902 (Cal.App. 2 Dist.1987), a psychologist's patient brought a civil conspiracy action against an attorney who advised his client, the psychologist, that he could legally release information regarding statements made by patient during therapy for use by a third person in her action against the patient. The California court of appeals affirmed a lower court dismissal of the civil conspiracy claim after concluding that factual allegations made by plaintiff-patient did not permit inference that defendant attorney intended to injure patient in any way whatsoever, and that allegations did not sufficiently indicate attorney's involvement in conspiracy with psychologist and a third person. The court stated that at most, "the complaint avers that [defendant] 'knew or should have known' that his advice to [the psychiatrist] would in some way harm the plaintiff." 193 Cal.App.3d 1326, 238 Cal.Rptr. at 907. However, "[s]uch a vague allegation avails plaintiff nothing," because "[t]hat allegation sounds in negligence while the main thrust of the complaint sounds in intentional tort." *Id.*

Similar to the plaintiff in *Schick*, at most Plaintiff's complaint alleges that Caesars "knew or should have known" that by releasing the employment records to the IRS, Plaintiff would in some way be harmed by later IRS agency action. However, this vague allegation does not sufficiently state an agreement to injure. By the record, Caesars was at most pursuing its own "fair interest" in cooperating with IRS: "... Caesars wanted to cooperate with the IRS but wanted to avoid bad employer/employee relations." Complaint, para. 24, Ins. 16–18.

**b) Natural and Necessary Result**

Neither can it be said that the "natural and necessary" consequence of Caesars' compliance with summons was prejudice to the public or "oppression" of Plaintiff, as required in *Hotel Riviera, Inc. v. Short*, 80 Nev. 505, 896 P.2d 855, 859–60 (1964). The "oppression" of which Plaintiff complains consisted of the personal and economic costs of defending against IRS audits, and criminal and civil prosecution. These audits and prosecutions were instituted as a result of IRS monitoring of dealers' activities made possible by the information Caesars provided. The decision to audit, however, was made only if the dealer refused to begin to comply with tax laws by currently reporting 100 percent of its tokes under one of several IRS proposed plans. *Letter from the IRS to Dealers*, (October 15, 1981) (Discussing willingness of IRS to forgive past violation in exchange for present compliance) (Complaint, Exhibit C incorporated by reference to complaint). In addition, the decision to prosecute was a function of

This court, therefore, hereby follows the general rule that dismissal of all federal claims before trial dictates that pendent state claims be dismissed.

### VII. *Conclusion*

For the aforementioned reasons, Defendant Caesars and Caesars' Employees' 12(b)(6) motion to dismiss Plaintiff's complaint and his six causes of action is hereby granted. The motion to dismiss the third, fifth and sixth causes of action of the individual federal defendants is also granted.

Upon consideration of the Motion of Defendants Desert Palace, Inc., Dan Cassella, Bruce Aguilera, Brian Menzell and Pat Cruzen to Dismiss the claims against them, good cause appearing,

IT IS HEREBY ORDERED that the Motion to Dismiss be granted as to the Defendants Desert Palace, Inc. dba Caesars Palace Hotel & Casino, Dan Cassella, Bruce Aguilera, Brian Menzell and Pat Cruzen, and the claims against them reflected in the first, second, and fourth causes of action to the First Amendment to Complaint for Damages are dismissed.

Upon consideration of the Motion of Defendants Jones, Burns, Durfee, and Green to Dismiss with Prejudice for Failure to State a Claim or, in the Alternative, for Partial Summary Judgment, good cause appearing,

IT IS HEREBY ORDERED that the Motion of Defendants Jones, Burns, Durfee, and Green to Dismiss for Failure to State a Claim is granted in all respects, and the claims against them and against Desert Palace, Inc. dba Caesars Palace Hotel & Casino, Dan Cassella, Bruce Aguilera, Brian Menzell, and Pat Cruzen, reflected in the third, fifth, and sixth causes of action to the First Amendment to Complaint for Damages are dismissed.

---

IRS discovery of tax code violations through said monitoring.

On these facts, the detection of these violations and subsequent IRS lawsuits and prosecutions had much more to do with Plaintiff's actions than with Caesars' actions. They were not the "necessary" result of Caesars' furnishing the name, address and social security number of each Ceasars' Palace dealer/employee to the IRS.

Federal courts applying state law should not permit vague and conclusory pleadings to lead them into pronouncing broad principles of state law for which in the pertinent state there exists no controlling authority." *Meiji Mutual Life Insurance Company,* 727 F.2d 1480 (9th Cir. 1984) (The court so reasoned after upholding the dismissal of a civil conspiracy claim). Defendant's motion to dismiss Plaintiff's first and second conspiracy claims for failure to state a cause of action may be granted on the alternative grounds that the complaint fails to allege the requisite elements of a civil conspiracy claim under Nevada law.